**Gene COKER, d/b/a Green Gables Tavern, a sole proprietorship, Appellant,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, a corporation domesticated in the State of Oklahoma, Appellee.**

No. 47284.

Supreme Court of Oklahoma.

June 13, 1978.

L. G. Hawkins, Sapulpa, for appellant.

Nancy L. Coats, Oklahoma City, for appellee.

IRWIN, Justice.

Gene Coker, d/b/a Green Gables Tavern (appellant), sought to impose liability on Southwestern Bell Telephone Company (appellee) for damages sustained when a fire destroyed his place of business. A demurrer was sustained to appellant's petition and appellant perfected this appeal. The facts, stated most favorable to appellant, are as follows.

Appellant was the owner-operator of a tavern located some distance outside the corporate limits of Cleveland, Oklahoma. Pursuant to a contract with appellee, a pay telephone was installed in appellant's place of business. For some nine or ten days prior to the fire the pay phone was in an essentially non-operative condition. Appellant made numerous complaints to appellee concerning the serviceability of the pay phone, but no repairs were ever made on the malfunctioning equipment. Appellee's equipment was still in this non-functional condition when appellant arrived one morning and discovered smoke coming from his roof. Appellant immediately attempted to call the Cleveland Fire Department, but the phone worked no better on this occasion than it had for the previous nine days. When efforts to summon help by means of the telephone failed, appellant flagged a passing motorist through whom the fire department was contacted. By the time fire fighting equipment arrived the building was totally involved in flame and was a complete loss.

Appellant makes no contention the fire was in any way caused by appellee's defective telephone. Liability is predicated exclusively on appellant's inability to use the telephone for the purpose of timely summoning emergency assistance to extinguish the fire. Throughout the petition appellant typifies his cause of action as the breach of a duty arising from the contract of the parties or a breach of warranty. No copy of the contract was appended to appellant's petition.

Appellee demurred to the petition attaching to the demurrer excerpts from its "Tarriffs". Appellee's tariffs are the schedule of rates, regulations and contractual provisions which it must, as a regulated utility, incorporate into its contract of service to the consumer. These tariffs are filed with the Oklahoma Corporation Commission and once approved by Commission constitute a part of the contract between the utility and its subscriber. The tariffs here involved include provisions which limit appellee's contractual liability for failures and interruptions in service. The tariffs, insofar as they are important here, provide:

"C. Interruptions of Service—The customer assumes all risk for damages arising out of mistakes, omissions, interruptions, delays, errors, or defects in transmissions, failures or defects in equipment and facilities furnished by the Telephone Company occurring in the course of furnishing service, in the telephone service or other communication services furnished him by the Telephone Company, or of the Telephone Company failing to maintain proper standards of maintenance and operation and to exercise reasonable supervision, except as follows: If service is interrupted other than by negligence or willful act of the customer an allowance at the rate for that portion of the customer's service affected by the interruption shall be made for the time such interruption continues after the fact is reported by the customer or after detected by the Telephone Company and the interruption is for more than 24 hours. No other liability shall in any case attach to the Company in consideration of such interruptions . . ."

It appears the trial court sustained appellee's demurrer to appellant's petition on the

basis of the liability limiting provisions contained in the tariff. We find it unnecessary to determine the correctness of the trial court's ruling based on such reasoning, but will assume for the purposes of this opinion only that the trial court erred in sustaining appellee's demurrer upon this basis. We make this assumption in the case at bar for it is evident that the petition on its face does not state a cause of action against appellee. Whether appellant proceeds on a theory of contract, as asserted throughout his petition, or on a theory of negligence in tort, as reasonably raised by the facts alleged, the authorities are virtually unanimous in their conclusion that no liability may be predicated on the kinds of facts here alleged.

On a theory of recovery for breach of contract, the damages alleged are too remote and speculative to permit recovery. As a general rule in this jurisdiction, the recovery of damages in cases of breach of contract have been controlled by the rule of law first announced in *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng.Reprint 145 (1854). The rule as stated by the English Court is as follows:

"Where two parties have a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of the injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such breach of contract."

It cannot seriously be suggested that appellee and appellant contemplated in their contract that appellee would act as an insurer for fire damage to appellant's building in the event the telephone equipment failed to operate upon the possible occurrence of a fire. In ordinary circumstances all that is contemplated is that communications services will be provided for the subscriber's convenience in the pursuit of the subscriber's usual business and personal affairs. Appellant appears to recognize this principle as he has alleged "special circumstances" which supposedly put appellee on notice of his unique position. Allegedly appellee was on notice appellant was the proprietor of a tavern in which the phone equipment would be installed and that taverns are places from which emergency calls are often made. Even assuming arguendo that special circumstances exist of which appellee should be aware when providing service to a tavern, the special conditions contemplated are not those which arose and because of which the appellant now seeks damages. Simply because as alleged by appellant it is often necessary to summon police to tavern, it does not necessarily follow that liability attaches against a telephone company for failure of service to a police department.

The Washington Court, ruling on facts for all practical purposes identical to those in the case at bar, *Foss v. Pacific Telephone & Telegraph Co.*, 26 Wash.2d 92, 173 P.2d 144 (1946), collected and analyzed numerous decisions addressing the very point here considered. In every case therein discussed the conclusion was reached that damages for the destruction of property by fire which is predicated on a failure or interruption of telephone or other communication

services were too remote and speculative to form a basis for recovery in contract. This is not to say that failure or interruption of service under any and all circumstances will not support an action for damages. However, in the case at bar, it cannot be said that appellant's damages were either within the normal contemplation of the contracting parties or within the contemplation of the parties as a matter of law by reason of the surrounding special circumstances. See 67 A.L.R.3d 76 "Failure of Telephone Service".

■■ Nor can it be successfully maintained that the petition states a cause of action in tort. The facts plead are simply not sufficient to allege the requisite causal connection between the negligent conduct of the appellee and the resulting damages. Proximate cause does not necessarily mean the "actual cause" of an injury. The actual cause of an injury may be any act which sets in motion the chain of events resulting in damage. Liability for negligence in acting or failing to act attaches where such negligence is the proximate cause of the injury. For example, in the case at bar we are not enlightened as to the "actual cause" of the fire, which may have been the negligence of some third party or simply an "Act of God". If the alleged negligence of the defendant when commingled with the other operative agency is an efficient and contributing concurrent cause, then the negligence may be said to be the "proximate cause" of the injury. *Black v. Ellithorp*, Okl., 382 P.2d 23 (1963). Whether considered alone or in conjunction with some other operative agent, the negligence must be the efficient cause which sets in motion the subsequent chain of events leading to the injury rather than merely furnishing a condition by which injury was possible. *Thur v. Dunkley*, Okl., 474 P.2d 403 (1970).

■ In order to establish the causal connection between the defective telephone and the ultimate destruction of appellant's place of business it is necessary to heap conclusion upon conclusion as to the course events would have taken had the telephone operated properly. As stated by the Wash-

ington Court when addressing the issue of causation in *Foss v. Pacific Telephone & Telegraph Co.*, supra:

> "Appellant's claim of causation rests on pure speculation. Surely we could not hold that anyone could ever say that if respondent's operator had promptly answered appellant's call and made connection of his telephone with the fire department in Kent that the fire department would have immediately answered the telephone; would have promptly left the house where the fire department equipment is kept; would have proceeded rapidly to the scene of the fire without mishap; would have quickly arranged its equipment to fight the fire, and would have extinguished the fire with only minor damage to the building."

The number and character of the random elements which must come together in precisely the correct sequence at exactly the right time in order for it to be established that failure of telephone service was an efficient cause of appellant's loss so far remove appellee's act of negligence from the ultimate consequences as to break any asserted causal connection. The failure of phone service is too remote from the loss sustained to establish grounds for recovery. See *Woodward v. Kinchen*, Okl., 446 P.2d 375 (1968); *Pepsi-Cola Bottling Co. of Tulsa, Okl. v. Von Brady*, Okl., 386 P.2d 993 (1963).

ORDER OF THE TRIAL COURT AFFIRMED.

LAVENDER, V. C. J., and DAVISON, WILLIAMS, BERRY, SIMMS and DOOLIN, JJ., concur.

BARNES, J., dissents.