2011 OK CIV APP 78

Maurice R. MASSEY and Margaret Massey, Plaintiffs/Appellants,

v.

BAYVIEW LOAN SERVICING, LLC, a Delaware limited liability company; and Interbay Funding, a Delaware limited liability company, Defendants/Appellees.

No. 108,185.

Court of Civil Appeals of Oklahoma, Division No. 2.

April 4, 2011.

Certiorari Denied June 6, 2011.

James R. Webb, Andrew S. Long, McAffee & Taft, a Professional Corporation, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Steven A. Heath, Baer, Timberlake, Coulson & Cates, PC, Tulsa, Oklahoma, for Defendants/Appellees.

JOHN F. FISCHER, Vice Chief Judge.

¶1 Plaintiffs Maurice and Margaret Massey appeal the grant of summary judgment to Defendants Bayview Loan Servicing, LLC, and Interbay Funding and the denial of their cross-motion for summary judgment. Because we find the Lockout Fee and Prepayment Consideration provisions of the promissory note executed by the Masseys are unenforceable, we reverse the judgment granted in favor of Defendants Bayview and Interbay and remand this case to the district court with directions to grant the Masseys'

cross-motion for summary judgment in that respect.

## BACKGROUND

¶2 The material facts in this case are not disputed.[1] The Masseys owned real property in Oklahoma City. In November 2007, they refinanced their $158,868.41 mortgage balance on this property with a $227,500 loan that was eventually acquired by Bayview from Interbay. This loan was secured by a mortgage and security agreement in the Masseys' Oklahoma City property. In March 2008, the Masseys entered into an agreement to sell this property for $425,000. In conjunction with the closing of this sale in May 2008, the Masseys requested payoff figures for the loan. Bayview responded that the payoff amount would be $378,330.45. In order to comply with the requirement in their real estate sales agreement to convey the property free of the Bayview mortgage, the Masseys paid the amount provided by Bayview but informed Bayview that they were doing so "under protest." The Masseys then sued Bayview and Interbay, alleging that the Lockout Fee and Prepayment Consideration provisions of the loan were unenforceable. The Masseys bring this appeal from the judgment granted in favor of Bayview and Interbay and from the denial of their cross-motion for summary judgment.

## STANDARD OF REVIEW

¶3 Oklahoma District Court Rule 13, 12 O.S. Supp.2010, ch. 2, app., governs the procedure for summary judgment in the district court. In this case, the material facts are not in dispute. This appeal is resolved by interpreting the relevant provisions of the parties' contract. If, as in this case, the contract language is not ambiguous, its meaning is a matter of law for the court. *GEICO Gen. Ins. Co. v. Northwestern Pac. Indem. Co.*, 2005 OK 40, ¶11, 115 P.3d 856, 858. Determining the validity of a provision

in a contract for liquidated damages is a question of law. *Claude Neon Fed. Co. v. Larkins*, 1936 OK 409, ¶5, 58 P.2d 882, 883. Questions of law are reviewed *de novo*. *Gladstone v. Bartlesville Indep. Sch. Dist. No. 30*, 2003 OK 30, ¶5, 66 P.3d 442, 445.

## DISCUSSION

¶4 Paragraph 7 of the Bayview promissory note is entitled "Prepayment." It contains two provisions that the Masseys argue are unenforceable, the Lockout Fee and the Prepayment Consideration.

### I. The Lockout Fee

¶5 Paragraph 7(a) contains the following language:

> *Lockout Period:* Borrower shall not be permitted to make any full or partial prepayment of the principal balance of this Note (a "Prepayment") prior to that date that is sixty (60) months after the date of this Note (the "Lockout Period"). If for any reason, a Prepayment is made during the Lockout Period (a "Lockout Prepayment"), Borrower shall simultaneously therewith, be obligated to pay: (i) the aggregate amount of interest which would have accrued on the unpaid principal balance of this Note from the date of such lockout Prepayment through the expiration date of the Lockout Period (the "Lockout Fee"), plus (ii) all amounts specified in Section 7(b) below.

As calculated by Bayview, the Lockout Fee paid by the Masseys at the closing of the sale of their property May 15, 2008, was $117,613.20. It is undisputed that this was the entire amount of interest that the Masseys would have paid at the contract rate during the unexpired term of the Lockout Period. The Masseys contend that this is a liquidated damage provision that imposes a penalty rather than a reasonable estimate of anticipated loss from a prepayment and is therefore unenforceable. Bayview responds

---

1. The parties do disagree in one respect. The Masseys contend they were told that there would only be a $25,000 fee required for early payment of the principal balance, and that they were not told about the Lockout Fee. Bayview relies on the written language of the note. However, the Masseys do not rely on this factual dispute to avoid summary judgment and have waived that argument. They contend that, as a matter of law, the loan provisions at issue are unenforceable.

that this is not a liquidated damages provision but merely a bargained-for term of the agreement pursuant to which Interbay was willing to lend money to the Masseys. It also argues that the Masseys incurred the Lockout Fee only because they voluntarily chose to sell the property prior to the expiration of the five-year Lockout Period.

¶ 6 First, it is undisputed that the Masseys were required to obtain a release of the Bayview mortgage in order to meet the contractual obligations of their real estate sales contract. Bayview's argument would in essence have us construe the Lockout Period clause as a restraint on the Masseys' ability to sell their property for five years. We do not find that construction plausible from the plain language of the promissory note. Nonetheless, even if we were to find that construction plausible, the provision would be unenforceable. *See Lohmann v. Adams,* 1975 OK 86, ¶ 31, 540 P.2d 552, 556 (holding that whether imposed by deed or contract, a restraint on alienation of land unaccompanied by forfeiture provisions is void).

¶ 7 Second, although the particular loan provisions involved in this case have not been addressed by Oklahoma courts, Oklahoma law on liquidated damages is well developed. *See* 15 O.S.2001 §§ 213–215. "Except as expressly provided in Section 215 of this title, penalties imposed by contract for any non-performance thereof, are void." 15 O.S.2001 § 213. Section 214 provides: "Every contract, by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided by Section 215 of this title." The language of the promissory note is clear; the Masseys would "not be permitted to make any full or partial prepayment of the principal balance of this Note (a "Prepayment") prior to that date that is sixty (60) months after the date of this Note." Whether characterized as a penalty, damages or other compensation, it is undisputed that the Lockout Fee was assessed because the Masseys failed to perform their agreement to maintain the loan for five years. Therefore, we find that paragraph 7(a) of the promissory note contains a liqui-

dated damage provision and is void, unless permitted by 15 O.S.2001 § 215.

¶ 8 The relevant exception in section 215 provides:

A stipulation or condition in a contract ... providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

15 O.S.2001 § 215(A). What is at issue in the Lockout Fee clause is the amount of interest Bayview anticipated it would earn during the first five years of the Massey loan. The test for determining whether the Lockout Fee is enforceable involves three criteria:

1) the injury caused by the breach must be difficult or impossible to estimate accurately; 2) the parties must intend to provide for damages rather than for a penalty; 3) the sum stipulated must be a reasonable pre-breach estimate of the probable loss.

*Sun Ridge Investors, Ltd. v. Parker,* 1998 OK 22, ¶ 8, 956 P.2d 876, 878. We find that the Lockout Fee fails the *Sun Ridge* test.

¶ 9 The first *Sun Ridge* criterion requires an investigation into the damages caused by the Masseys' breach of the Lockout Period clause and whether those damages would be difficult or impossible to calculate at the time the promissory note was signed. Contract damages are defined by statute:

For the breach of an obligation arising from contract, the measure of damages ... is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.

23 O.S.2001 § 21. The specific statute applicable in this case is found at 23 O.S.2001 § 22: "The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon." The amount of any unpaid principal and the interest to be paid on that amount during any

portion of the first five years of this loan can be determined with mathematical certainty. What may have been difficult to determine was the portion of this amount Bayview would have been entitled to recover if it had a duty to mitigate its damages by investing the principal balance on the Masseys' breach.[2] Nonetheless, "no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof. . . ." 23 O.S.2001 § 96.

¶ 10 As the Masseys point out, because the Lockout Fee was not discounted to present value, it is more than Bayview would have received if the Masseys had paid the loan as agreed for the full five years of the Lockout period. As noted by the Supreme Court in *Florafax International, Inc. v. GTE Market Resources, Inc.*, 1997 OK 7, 933 P.2d 282:

> The time-honored general rules on recovery of damages for breach of contract are found in *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1854)—rules this Court has generally followed. They are: 1) where no special circumstances distinguish the contract involved from the great mass of contracts of the same kind, the damages recoverable are those as would naturally and generally result from the breach according to the usual course of things, and 2) where there are special circumstances in the contract, damages which result in consequence of the special circumstances are recoverable, if, and only if, the special circumstances were communicated to or known by both parties to the contract at the time they entered the contract. 22 Am.Jur.2d Damages § 464 (1988).

*Id.* at ¶ 25, 933 P.2d at 292 (citing *Coker v. Southwestern Bell Tel. Co.*, 1978 OK 85, ¶ 6, 580 P.2d 151, 153). There is nothing in this record to distinguish the Bayview loan from the "great mass" of real estate loans. It is undisputed that the Masseys breached the terms of that loan by paying the balance prior to the expiration of the five-year Lockout Period. It is also undisputed that Bayview has been damaged as a result of that breach. The amount of Bayview's damages will be determined by the district court on remand. However, the Lockout Fee cannot be used as a substitute for that determination because it is more than the amount Bayview was damaged by the Masseys' breach.[3]

## II. The Prepayment Consideration

¶ 11 In addition to the $117,613.20 Lockout Fee, Bayview charged the Masseys a Prepayment Consideration of $11,370.61 pursuant to paragraph 7(b) of the Note. The Prepayment Consideration is calculated at five percent of the unpaid principal balance and is incurred if the loan is repaid in full any time during the first eight years after the loan was made. The Masseys argue this fee is excessive for two reasons. First, it is required to be paid in addition to the Lockout Fee but is triggered by the same event, prepayment of the loan. Second, the Masseys contend this fee is unreasonable because they were separately charged $3,428.70 for the document fees, legal expenses and similar expenses directly incurred by Bayview as a result of the Masseys' prepayment. In addition to these fees, the Masseys paid $7,390.90 in default interest as well as $11,114.77 in accrued interest prior to closing.

¶ 12 The controlling statute is 23 O.S.2001 § 97: "Damages must, in all cases, be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered." *In LaSalle*

---

**2.** This issue was not presented to the district court and we express no view as to whether Bayview had a duty to mitigate. It is not the duty of an appellate court to make first-instance determinations of disputed law or fact issues. *Bivins v. State of Oklahoma ex rel. Oklahoma Mem'l Hosp.*, 1996 OK 5, ¶ 19, 917 P.2d 456, 464.

**3.** This holding is consistent with decisions from the federal Bankruptcy Court cited by the Masseys for the proposition that failure to recognize the time value of money by discounting to present value the amount due is unreasonable. *See In re A.J. Lane & Co., Inc.*, 113 B.R. 821 (Bankr. D.Mass.1990); *In re Kroh Bros. Dev. Co.*, 88 B.R. 997 (Bankr.W.D.Mo.1988); *In re Skyler Ridge*, 80 B.R. 500 (Bankr.C.D.Cal.1987).

*Bank National Association v. Shepherd Mall Partners, LLC.,* 2006 OK CIV APP 91, 140 P.3d 559, this court found a five percent late payment fee paid in addition to default interest and attorney fees to be an unenforceable penalty. In that case, the loan documents stated the purpose of the late payment fee was to defray the lender's expense in handling delinquent payments and compensate for the loss of use of the funds paid late. *Id.* at ¶ 8, 140 P.3d at 561.

¶ 13 Here, the promissory note contains no explanation of the purpose for the Prepayment Compensation. There may be some purpose for Prepayment Compensation in the three years between the end of the Lockout Period and the end of the Prepayment Period. However, we find the reasoning in *LaSalle* to be persuasive based on the facts in this case, when the Prepayment Compensation is added to all of the other amounts charged to the Masseys. The Prepayment Compensation is a penalty, and that provision of the promissory note cannot be enforced.[4]

### III. The Voluntary Payment Doctrine

¶ 14 The primary argument advanced by Bayview in support of its motion for summary judgment is that the Masseys voluntarily paid the amount claimed due by Bayview and, therefore, were precluded from later challenging the validity of the amounts charged. Citing cases discussing the voluntary payment doctrine, Bayview argues that the Masseys payment is an affirmative defense to their claim in this case. We find the Masseys' "voluntary" payment in this case does not preclude their suit to recover money wrongfully paid. As the Supreme Court noted in the primary case relied on by Bayview:

Where a person unlawfully demanding a payment is in a position to seize or detain the goods or other personal property of a person against whom the claim is made, without a resort to judicial proceedings in which the parties may contest the validity of the claim, payment under protest to recover or retain the property will be considered as made under compulsion, and the money can be recovered back, at least where a failure to get or retain immediate possession and control of the property would be attended with serious loss or great inconvenience.

*Hadley v. Farmers' Nat'l Bank of Oklahoma City,* 1927 OK 183, ¶ 12, 257 P. 1101, 1103 (quoting with approval Cyc., vol. 30, at 1308). Here, the Masseys were required to pay the amounts demanded by Bayview in order to obtain a release of the Bayview mortgage so that the Masseys could complete the sale of their property. Bayview was in a position to frustrate that sale absent the Massey payment. As the *Hadley* Court also held, "[o]ne of the requirements to come within this rule is payment under protest, or at least something to show that payment was prompted by compulsion or coercion, and not voluntarily." *Id.* at ¶ 13, 257 P. at 1103. The Masseys met this requirement. On the "Payoff Statement Calculation," Exhibit H to Bayview's motion, and on the "Settlement Statement," Exhibit 1 to the Masseys' motion, the Masseys informed "all parties involved" that they were paying the amount demanded by Bayview under protest. We find that the voluntary payment rule does not preclude the Masseys from recovering money wrongfully paid to Bayview.

### CONCLUSION

¶ 15 The Masseys filed this case to recover part of the money paid to Bayview in satisfaction of their contractual obligation pursuant to a promissory note. Defendants Bayview and Interbay filed a motion for summary judgment, and the district court granted that motion. We find the district court erred and reverse the judgment in favor of Defendants. The Masseys also sought summary judgment, arguing that the Lockout Fee and Prepayment Consideration

---

**4.** Bayview attempts to distinguish *LaSalle* based on the fact that the late payment was sought to be enforced in the lender's foreclosure action rather "voluntarily" incurred when the Masseys chose to sell their property. We find this distinction immaterial when determining the effect of the payment, but note that paragraph 4 of the Bayview promissory note would require Prepayment Consideration if the Masseys defaulted on the loan prior to the end of the Prepayment Period.

provisions of the promissory note were un-enforceable. For the reasons stated in this Opinion, we find that the Masseys' motion should have been granted. We remand this case to the district court with directions to enter an order granting the Masseys' motion for summary judgment. The district court will then determine the amount of damages incurred by Bayview as a result of the Masseys' breach of the promissory note and enter judgment for the Masseys for the difference between that amount and the amount previously paid by the Masseys to Bayview.

¶16 **REVERSED AND REMANDED WITH DIRECTIONS.**

BARNES, P.J., and WISEMAN, J., concur.